STATE of Missouri ex rel. Michael D. GARRETT, Director, The Department of Public Safety and former Supervisor of Liquor Control for the State of Missouri

and

Robert G. Stewart, acting Supervisor of the Division of Liquor Control of the State of Missouri, Relators,

v.

The Honorable Alvin C. RANDALL, Judge, Circuit Court of Missouri, Sixteenth Judicial Circuit, Division No. 4, Kansas City, Missouri, Respondent.

No. 58864.

Supreme Court of Missouri, En Banc.

Sept. 8, 1975.

John C. Danforth, Atty. Gen., Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, for relators.

Law Offices, Anthony J. Romano, Professional Corp., Kansas City, for respondent.

FINCH, Judge.

This original proceeding in prohibition seeks to limit the actions of respondent judge in his consideration of a petition for judicial review of a decision of the supervisor of liquor control denying renewal of a license for sale of liquor by the drink at retail. It involves the issue of whether in conducting that review respondent lacks jurisdiction to hear and consider evidence other than the record certified to the circuit court by the supervisor in accordance with § 311.700(2).[1] We conclude that he does lack such jurisdiction and we make our rule in prohibition absolute.

On June 25, 1974, the supervisor (then relator Garrett), without conducting an evidentiary hearing, notified applicant, Jasper's Italian Restaurant, Inc., by written communication that he would not renew its liquor license for sale of liquor by the drink for the year beginning July 1, 1974. The supervisor's decision recited that in reaching this conclusion, he had considered the transcript of a case in the United States District Court for the Western District of Missouri wherein Jasper Mirabile (managing officer and sole stockholder of the corporation) had been charged and convicted in April 1974 of using the mails to defraud the state of Missouri of sales tax. The supervisor's ruling discussed the evidence in that case, including that of Mirabile himself, and stated that the transcript disclosed that beginning in the mid-1950s, not only did Mirabile know that accountants employed to file the company's tax returns were underreporting restaurant sales, but during much of that time Mirabile actually furnished the accountants with the erroneous figures which they were to report. Such figures generally represented only one-third to one-half of actual sales of the restaurant but in some periods were even less than one-third of sales. The supervisor pointed out in his ruling that the transcript disclosed that Mirabile admitted that he knew he was cheating the state of Missouri by withholding thousands of dollars due and that he continued even after the accountants told him on several occasions that he should discontinue the practice. The letter to applicant then pointed out that § 311.060 provides that no corporation shall be qualified for a liquor license unless its managing officer and officers, directors and stockholders holding 10 per cent or more of the stock of the corporation be persons of good moral character. On the basis of the evidence disclosed by the transcript in the federal prosecution, the supervisor concluded that Jasper Mirabile had failed to maintain the good moral character required by § 311.060 and that for this reason the license should be refused.

Thereafter, on July 8, 1974, the applicant corporation filed with the supervisor pursuant to § 311.700(2) its application for review of his ruling,[2] and on July 10, 1974,

1. All statutory references are to RSMo 1969 unless otherwise indicated.

2. On the following day, July 9, 1974, the corporation filed a new application to renew its liquor by the drink license. That application and accompanying documents disclosed that Jasper Mirabile had transferred all of his stock in the corporation to his wife Josephine and that she had been named managing officer of the corporation. The application stated that Jasper Mirabile would serve as food manager for the restaurant but would have nothing to do with dispensing alcoholic beverages. The supervisor, on the basis of these representations, approved that application and the liquor by the drink license of the corporation was renewed. Relator thereafter filed a motion to dismiss the petition for review on the basis that the requested relief (i. e., renewal of the corporation's liquor license) had been granted and the issue was moot. That motion was overruled. We do not decide the mootness question in this proceeding in prohibition.

relator Stewart (he meanwhile had succeeded Garrett) transmitted to the clerk of the Circuit Court for the Sixteenth Judicial Circuit a certified full and complete transcript of all records and other documents considered in the supervisor's refusal to renew applicant's liquor license, including the letter conveying his decision.

At a hearing of applicant's application for review on September 29, 1974,[3] respondent, over relator's objection, heard oral testimony from Jasper Mirabile and then subpoenaed relator Garrett to appear and testify at a subsequent date. Relators filed a motion to quash the subpoena, which was overruled. Their petition for writ of prohibition herein followed.

*Does respondent lack jurisdiction to hear and consider evidence other than the record on appeal certified by the Supervisor?*

■ Sec. 311.700(2), the applicable statutory provision, provides as follows:

"Any party to the proceedings who is aggrieved by any final decision, finding, rule or order of the supervisor may file with the supervisor of liquor control his application for a review within fifteen days after notice of such decision shall have been mailed to said party. *Within ten days after receipt of such application for review, the supervisor shall transmit to the circuit court of the county wherein the party aggrieved resides, a certified copy of the entire record of the proceedings under review, including a transcript of the evidence heard in cases in which a hearing is required by law.* The filing of such application for review shall not stay enforcement of the supervisor's decision. Such action shall be given precedence over all other civil cases and shall be heard by the court as soon as possible after the filing thereof, except that they

shall not be heard ahead of cases arising under the workmen's compensation and unemployment compensation laws of this state. *The review shall be conducted by the court without a jury. The reviewing court may affirm the decision of the supervisor or may reverse or modify it when such decision is not authorized by law and, in cases in which a hearing is required by law, when such decision is not supported by competent substantial evidence on the whole record.* The supervisor or any other party to the proceedings may secure a review of the final judgment of the circuit court by appeal in the manner and form provided by law for appeals from the circuit court in civil cases." (Emphasis supplied.)

The foregoing statute has been held to call for the circuit court to review the action of the supervisor on the basis of the certified record of the proceedings before the supervisor. This court so stated in *Pinzino v. Supervisor of Liquor Control,* 334 S.W.2d 20 (Mo.1960), wherein, without holding an evidentiary hearing, the supervisor, acting under § 312.120,[4] refused to renew for a year ending June 30, 1960, a 3.2% beer license which Mrs. Pinzino had obtained originally in 1951 and which had been renewed each year thereafter until this renewal application was rejected. In so ruling, this court, after holding that an evidentiary hearing by the supervisor was not required under the statute when *issuance or renewal* of a license is involved, said, 334 S.W.2d at 26:

"It seems apparent, therefore, that inasmuch as no hearing was required by law prior to the supervisor's refusal to issue the renewal license, the circuit court's only province on review was to determine whether the supervisor's final decision was 'authorized by law,' that is,

---

3. At that hearing respondent permitted Jasper Mirabile individually to be named as an additional petitioner in the proceedings to review the action of the supervisor in refusing to renew the corporation's license.

The propriety of that action is not an issue in this proceeding.

4. In this case the supervisor acted pursuant to § 311.210, but its provisions are identical to § 312.120.

to determine whether the exercise of the supervisor's sole discretion was in accord with statutory authority, whether it was in violation of any constitutional provision, whether the decision reached was arbitrary or capricious, or unreasonable and thus an abuse of discretion." [5]

The court then concluded, 334 S.W.2d at 28:

" * * * [I]t seems apparent that where, as we have held was here the case, the province of the circuit court on review was only to determine whether the sole discretion vested in the supervisor, who was authorized to act without a hearing, was lawfully exercised by him, the circuit court properly could not hear evidence."

This conclusion as to the record to be considered by the circuit court in reviewing (pursuant to § 311.700) the action of the supervisor is confirmed by the opinion of this court in *State ex rel. 807 Inc. v. Saitz*, 425 S.W.2d 96 (Mo.1968). That case dealt with review of the *revocation* of a license, and pursuant to the applicable statute (§ 312.370), there had been notice and a hearing before the supervisor at which testimony was heard. The circuit court, on the basis of the record certified to it by the supervisor, affirmed the revocation of the license. Then, without notice or a hearing, the court set aside its judgment (but not the submission) and entered a new judgment which likewise affirmed the revoca-tion. Applicant on appeal complained that the circuit court's action deprived him of due process. In denying this contention, this court pointed out that the applicant was able to file a motion for new trial and to perfect the appeal and that it was not entitled to any additional hearing in the circuit court, saying, 425 S.W.2d at 101:

" * * * There was no additional hearing to be held inasmuch as the only authorized submission was of the transcript previously submitted January 24, 1967, and appellant was enabled to file motion for new trial and, ultimately, this appeal."

Thus, this court in *807 Inc.* again recognized that review under § 311.700 is on the transcript certified to the circuit court by the supervisor and that said court is not to hear additional testimony for the purpose of supplementing the record received from the supervisor. We reaffirm that ruling.

On the basis of the record certified to the circuit court by the supervisor, the circuit court is to perform the review contemplated by § 311.700(2). That review was described in *Pinzino v. Supervisor of Liquor Control*, 334 S.W.2d at 26–27, as follows:

" * * * Here, as we have noted, the law required no hearing but vested in the supervisor the sole discretion whether to issue or refuse to issue the license. Under those circumstances, as we view it,

5. In reaching the conclusion stated in the quoted paragraph that the supervisor was not required to hold a hearing in connection with whether to issue a renewal license, the court stated, 334 S.W.2d at 25:

"A review of the statutes referred to above makes it reasonably clear that the legislature has vested sole discretion in the supervisor to issue or refuse to issue each license, whether one of original issue or a renewal, and that a hearing is not an essential prerequisite to the lawful exercise of that sole discretion. Section 312.-120 (vesting discretion in the supervisor to issue or refuse to issue licenses) refers to *all applications for all licenses mentioned in the chapter* and vests discretion in the supervisor to determine whether *each* application for such license shall be approved or disapproved, thus including by that broad language the renewal licenses mentioned and provided for in section 312.110. And section 312.120 does not contain any requirement for a hearing on the question whether to *issue* a license, while section 312.370 requires that prior to *revocation or suspension* the supervisor must give notice and hold a hearing as an essential prerequisite to the lawful exercise of the discretion vested in him to revoke or suspend a license.

"It would appear, therefore, that the legislature dealt differently with refusal to issue licenses and the suspension or revocation thereof, providing for a hearing as to the latter but omitting any such requirement as to the former."

the record furnished by the supervisor needed only to disclose that the information upon which he exercised his discretion was of such a nature that he could reasonably act thereon or, expressed differently, the record needed only to show that the supervisor acted reasonably in exercising his sole discretion and thus did not act arbitrarily or capriciously, or unreasonably and in abuse of his sole discretion."

*Is the Missouri Liquor Control Law unconstitutional on the basis that it denies due process as guaranteed by the Fourteenth Amendment to the U. S. Constitution and Art. I, § 10 of the Missouri Constitution?*

■ As previously noted, this court in *Pinzino* held that the supervisor of liquor control is not required by statute to conduct an evidentiary hearing as a prerequisite to ruling on applications for liquor licenses, whether of original issue or as renewals. The assertion that this deprivation of an evidentiary hearing constitutes a denial of due process was made and rejected in *Pinzino,* the court saying, 334 S.W.2d at 27–28:

"Appellant contends, however, that even though we hold that the statutes required no hearing prior to the supervisor's refusal to issue a renewal license, the supervisor's failure to hold such a hearing and the refusal of the circuit court to hear evidence on review, constituted a denial of due process in violation of the pertinent provisions of the state and federal constitutions. While this contention probably should be presented as an attack on the constitutionality of the statute empowering the supervisor to refuse to issue a license or a renewal license without a hearing, the contention, as made, overlooks the fact that the license being presently considered is one permitting the sale of 3.2% beer, and thus is in a category separate and apart and not subject to the law applicable to the denial of other licenses to engage in a trade or business or profession, or to sell a certain product. In *State v. Wipke,* 345

Mo. 283, 133 S.W.2d 354, 359[9, 10], the court en banc quoted this from *State v. Parker Distilling Co.,* 236 Mo. 219, 255, 139 S.W. 453, 237 Mo. 103, 139 S.W. 453, 461: 'Those authorities also establish the fact that the liquor traffic is not a lawful business, except as authorized by express legislation of the state; that no person has the natural or inherent right to engage therein; that the liquor business does not stand upon the same plane, in the eyes of the law, with other commercial occupations. It is placed under the ban of law, and it is therefore differentiated from all other occupations, and is thereby separated or removed from the natural rights, privileges, and immunities of the citizen.' In *State ex rel. Billado v. Wheelock,* supra, 114 Vt. 350, 45 A.2d 432[5, 6], it was said: 'When the purpose of an administrative determination is to decide whether a privilege which an applicant does not possess, such as a license to sell intoxicating liquor, shall be granted to him or withheld in the exercise of a discretion vested by statute, notice and hearing is not necessary in the absence of an express or implied statutory provision therefor. 42 Am.Jur., Public Administrative Law, § 135; *City of Centerville v. Gayken,* 20 S.D. 82, 104 N.W. 910; *McCormick v. Pfeiffer,* 19 S.D. 269, 103 N.W. 31; *Burke v. Collins,* 18 S.D. 190, 99 N.W. 1112; *Casala v. Dio,* 65 R.I. 96, 13 A.2d 693; *Darby v. Pence,* 17 Idaho 697, 107 P. 484, 27 L.R.A.,N.S., 1194; *Oval Bar & Restaurant, Inc., v. Bruckman,* 177 Misc. 244, 30 N.Y.S.2d 394; *Usdane v. Bruckman,* Sup., 30 N.Y.S.2d 396. It may be that there would be less danger of arbitrary action if a hearing were made a prerequisite, but that is a matter for legislative consideration, and not for us. The mere refusal to grant an applicant for a license to sell intoxicating liquors a hearing, when the statute does not require one, does not make the denial of the application arbitrary or capricious. *Darby v. Pence,* supra; *State ex rel. Renner v. Noel,* 346 Mo. 286, 140 S.W.2d 57;

*Burke v. Collins*, supra.' And it is generally held that due process is not violated even by suspension or *revocation* (much less refusal) of a license without notice and hearing (where no notice or hearing is required by law). Annotation, 35 A.L. R.2d 1067, 1070–1073. And so it is that the cases cited by appellant as to the right of an applicant to a hearing prior to the denial of a license are inapplicable where, as here, the license in question is one to engage in some aspect of the liquor business."

Subsequently, in *Peppermint Lounge, Inc. v. Wright*, 498 S.W.2d 749, 753 (Mo. 1973), this court again discussed the due process contention, saying:

" * * * In the Pinzino opinion the due process argument, advanced here by appellants, was rejected on the basis of the difference between the liquor business and other commercial occupations and on the basis that ' "[w]hen the purpose of an administrative determination is to decide whether a privilege which an applicant does not possess, such as a license to sell intoxicating liquor, shall be granted to him or withheld in the exercise of a discretion vested by statute, notice and hearing is not necessary in the absence of an express or implied statutory provision therefor." ' *Pinzino v. Supervisor of Liquor Control*, supra, 334 S.W.2d l. c. 27. Under the broad power of the states under the Twenty-first Amendment to the Constitution of the United States to specify the times, places and circumstances where liquor may be dispensed within its borders, *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), we reemphasize and reaffirm our position that because of the peculiar characteristics of the liquor business due process of law does not require a hearing on an application for a full drink liquor license."

See also *State ex rel. Wiggins v. Hall*, 452 S.W.2d 106 (Mo. banc 1970); *State ex rel. Renner v. Noel*, 346 Mo. 286, 140 S.W.2d 57 (banc 1940); *Kehr v. Garrett*, 512 S.W.2d 186 (Mo.App.1974).

Most courts in other jurisdictions have adopted a rule similar to that announced in *Pinzino* and *Peppermint Lounge*.[6] This fact is recognized in *Kopper Kettle Restaurants, Inc. v. City of St. Robert*, 439 S.W.2d 1, 4 (Mo.App.1969), where the court stated:

"Although there is some authority to the contrary, e. g., *Hornsby v. Allen*, 5 Cir., 326 F.2d 605, 608–610, and *Martin v. Board of Supervisors of Lake County*, 135 Cal.App. 96, 26 P.2d 843, 845–846[4][5–7], the general rule and the rule in Missouri is that, absent a statutory requirement, notice and a hearing are not prerequisites to the exercise of discretionary authority to grant or deny a liquor license. *Lewis v. City of Grand Rapids*, 6 Cir., 356 F.2d 276, 286–287, cert. den. 385 U.S. 838, 87 S.Ct. 84, 17 L.Ed.2d 71; *Pinzino v. Supervisor of Liquor Control, Mo.*, 334 S.W.2d 20, 27–28 [6–8]."

Respondent urges that the liquor license which the restaurant sought to renew was a property right and that due process requirements mandated an evidentiary hearing before applicant could be deprived of such property right. In support thereof, respondent cites and relies on various recent decisions of the United States Supreme Court. We conclude that decisions of that court do not require a change in the rule announced

---

**6.** Illustrative citations include *Smith v. Iowa Liquor Control Comm'n*, 169 N.W.2d 803 (Iowa 1969), cert. denied, 400 U.S. 885, 91 S.Ct. 146, 27 L.Ed.2d 130 (1970); *Walker v. City of Clinton*, 244 Iowa 1099, 59 N.W.2d 785 (1953); *Hornstein v. Illinois Liquor Control Comm'n*, 412 Ill. 365, 106 N.E.2d 354 (1952); *Green Mountain Post, No. 1, Am. Legion v. Liquor Control Bd.*, 117 Vt. 405, 94 A.2d 230 (1953). See also 1 F. Cooper, State Administrative Law ch. V, § 5 (1965); 1 K. Davis, Administrative Law Treatise § 7.19 (1958); Annot., Right to Hearing Before Revocation or Suspension of Liquor License, 35 A.L.R.2d 1067, § 3 (1954); Annot., Grant or Renewal of Liquor License as Affected by Fact that Applicant Held Such License in the Past, 2 A.L.R.2d 1239, § 2 (1948).

in *Pinzino* and *Peppermint Lounge.* In *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), the Supreme Court reviewed the decision of a three judge panel in the district court which held that due process constitutionally required notice and an adversary type hearing prior to denial of an application for renewal of a one year liquor license. The Supreme Court reversed, holding that a city is not a "person" under 42 U.S.C. § 1983. The case was ordered remanded to enable the district court to consider whether it had jurisdiction on some other basis and, if it did, to reconsider asserted Fourteenth Amendment rights in the light of intervening decisions. In so doing, the Court said, 412 U.S. at 515, 93 S.Ct. at 2227:

> "Appellees' licenses have been neither revoked nor suspended. Their claim of deprivation of Fourteenth Amendment procedural due process rights arises from the failure of the cities of Kenosha and Racine to hold full-blown adversary hearings before refusing to renew their one-year licenses. Our decisions last year in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 626 (1972), discussed the nature of 'liberty' and 'property' that is protected against denial without due process by the Fourteenth Amendment. The District Court did not discuss these recent cases, and it followed, in part, the decision of the Court of Appeals for the Seventh Circuit which was reversed in *Roth.* It, therefore, made no evaluation of 'property' or 'liberty' interests which might require a due process hearing, or of the nature of such a hearing if it were required in the light of our opinions in *Roth, supra,* and *Perry, supra.*
>
> "The District Court, also, did not have the benefit of this Court's decision in *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). There we held again that while the Twenty-first Amendment did not abrogate a require-ment of procedural due process, *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), it did grant the States broad authority over the distribution and sale of liquor. We also held that regulations prohibiting the sale of liquor by the drink on premises where there were nude but not necessarily obscene performances were facially constitutional.
>
> "We, therefore, direct the District Court, after addressing the issue of jurisdiction, to reconsider its judgment in the light of *Roth, Perry,* and *LaRue.* The judgment of the District Court is vacated and the cause is remanded for proceedings consistent with this opinion."

This court in *Peppermint Lounge* considered the effect of the cases which the Supreme Court in *Bruno* directed the district court to consider in determining the need for an evidentiary hearing in connection with an application for a liquor license. Having so done, this court concluded, 498 S.W.2d at 753:

> " * * * The position taken by this Court in Noel and Pinzino, supra, are not inconsistent with later concepts of the nature and limits of the property interests procedurally protected by the Fourteenth Amendment. For instance, in *Board of Regents v. Roth,* 408 U.S. 564, 576–577, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972) it was observed that the Amendment's procedural protection of property 'is a safeguard of the security of interests that a person *has already acquired* in specific benefits.' (Emphasis ours.) Roth further indicates that to have a property interest in a benefit a person must have more than an abstract need or desire for it and more than a unilateral expectation of it; he must have a 'legitimate claim of entitlement to it.' Thus Roth, a teacher hired by a state university for a fixed term of one year, who did not have tenure, informed without explanation that he would not be rehired for the ensuing year, was held to

have no property interest in continued employment protected by procedural due process. Similarly, appellants have no protectable property interest in a liquor license. Not having acquired any interest in a liquor license; having only the acquisitive desire for and a unilateral expectation of a license and no basis of a claim of 'entitlement' thereto, appellants have no right under the Fourteenth Amendment to a hearing on the question of its issuance." [7]

It is true that *Peppermint Lounge* dealt with an original application for a license (rather than a renewal of an existing license) but we conclude and hold that this does not dictate a different result. In *Board of Regents v. Roth, supra,* the Supreme Court held that a non-tenured teacher who had a one year contract with the university did not thereby secure an interest in re-employment for the next year and had no rights to procedural due process in connection with whether he would be rehired. In *Bruno* the court dealt with an application to renew a one year liquor license (same as here). We conclude that the appellant had no property interests in the one year liquor license which it possessed that would call for an evidentiary hearing as a condition to a denial of its application for the issuance of a renewal license. Accordingly, we hold that the failure to accord such an evidentiary hearing did not constitute a denial of due process.

*Is the Missouri Liquor Control Law unconstitutional on the basis that it denies equal protection of the law as guaranteed by Fourteenth Amendment to the U. S. Constitution?*

■ Finally, it is asserted that the Missouri Act denied equal protection by requiring no hearing when the supervisor acts on applications for new or renewal liquor licenses but does require an evidentiary hear-

ing before the supervisor may either revoke or suspend a liquor license. There is no rational basis, says respondent, for this differentiation in statutory classification and hence it is unreasonable. Respondent argues that refusal to renew amounts in at least some circumstances to a revocation even though not designated as such.

We reject this contention. There is a rational basis for the distinction. When applicant receives a liquor license for a fixed period such as a year, the legislature may conclude that the applicant makes definite plans for that period such as arrangements for financing, leasing, employment of personnel, contracts with suppliers and other matters. It is not unreasonable for the legislature to conclude that in such situations the applicant should be entitled to count on retaining that license for the specified period unless after notice and an adversary hearing, it is demonstrated that the license should be revoked or suspended. On the other hand, an applicant for a liquor license, whether new or renewal, seeks something it does not now have. No existing right, whether classified as property or not, is at stake. Just as the non-tenured teacher with a one year contract in *Roth* had no right to a hearing on whether he would be hired for another year, so the applicant for a renewal liquor license is not entitled to a hearing unless the statute so provides. Applicant has not been denied equal protection of the laws.

Having concluded that the circuit court in considering a petition for review under § 311.700(2) has no jurisdiction to hear and consider evidence in addition to the record certified to it by the supervisor as required by statute, our preliminary rule in prohibition against taking testimony from relator Garrett or other witnesses or considering testimony previously taken from respondent Jasper Mirabile is made absolute.

---

7. The court also considered the effect of the Twenty-first Amendment to the U. S. Constitution and the case of *California v. La-*

*Rue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

SEILER, C. J., and MORGAN, HOLMAN, HENLEY and DONNELLY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

BARDGETT, Judge (dissenting).

I respectfully dissent. The issue is whether the circuit court is permitted to take evidence at the hearing on a petition for review where the supervisor of liquor control refused to renew a liquor by the drink license but did not afford the licensee any hearing.

The duty of the circuit court is to determine whether the decision of the supervisor is authorized by law. Section 311.700(2), RSMo 1969. The supervisor's decision not to renew was upon his finding that Jasper Mirabile was not a person of good moral character. Mirabile was managing officer of the corporation which held the license and which had operated a restaurant and bar since about 1961.

The circuit court believed it had to hear evidence in order to decide whether the supervisor's decision was or was not authorized by law.

If the supervisor had sought to revoke a license or to suspend a license even for only a few days, he is required by law to give notice of charges and hold an evidentiary hearing. Section 311.690, RSMo 1969. But under the principal opinion, the licensee is not entitled to a hearing if his right to do business is terminated by a refusal to renew the license.

Revocation and nonrenewal accomplish the same result—the licensee is out of business.

In my opinion, the legislature recognized that the holder of a license has a property interest in its continuation and that is why the notice and hearing are required for suspension and revocation. I believe that due process and equal protection require that the holder of a license be afforded a hearing before the supervisor on the issue of license renewal before he is put out of business. Furthermore, it is my opinion that equal protection of law requires that a licensee be afforded the same or substantially the same right to notice and hearing as a licensee receives when suspension or revocation is the question.

In this case, the circuit court undertook to receive evidence in order to perform its review function under the law. Had the supervisor afforded the licensee a hearing in which the licensee had an opportunity to present evidence and argument refuting or explaining the charges and evidence against him, the circuit court would have a record before it upon which it could perform its review function. The so-called record filed by the supervisor merely contains whatever the supervisor wants it to contain. He may simply include material which, in his opinion, supports his conclusion. It may consist of totally incorrect information but the supervisor may honestly believe it to be correct. But the inaccurate or incorrect information cannot be shown to be such unless there is a hearing in which both sides can be heard.

I recognize that the position I take is contrary to prior Missouri cases referred to in the principal opinion and which concern the renewal of a license. In my opinion, the earlier cases which hold that a licensee has no right to a hearing before the supervisor on the issue of renewal of a license were incorrectly decided and should be overruled.

I do not believe it is realistic to suggest, as the principal opinion does, that persons who receive a liquor license gauge their arrangements for financing, leasing, employment of personnel, contracts with suppliers, and other matters to an expectancy of being in business for one year—the term of a license. To the contrary, common experience teaches that the investment made in many restaurants where liquor is sold is very substantial and that the investment is made and the commitments entered into with the actual expectation of deriving sub-

stantial revenue from liquor sales over a period of many years.

In *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), cited in the principal opinion, the court, referring to its decision in *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), said, "There we held again that while the Twenty-first Amendment did not abrogate a requirement of procedural due process, *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), it did grant the states broad authority over the distribution and sale of liquor."

Thus it appears that a liquor licensee does have some claim to procedural due process in connection with the renewal of his license.

In *Peppermint Lounge, Inc. v. Wright,* 498 S.W.2d 749, 753 (Mo.1973), the issue was whether due process required that an applicant for an original (not renewal) liquor license was entitled to a hearing. This court held that due process did not require such a hearing and analogizing to *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), said, "Similarly, appellants have no protectable property interest in a liquor license. Not having acquired any interest in a liquor license; having only the acquisitive desire for and a unilateral expectation of a license and no basis of a claim of 'entitlement' thereto, appellants have no right under the Fourteenth Amendment to a hearing on the question of its issuance."

I have no quarrel with this court's holding in *Peppermint Lounge* because it dealt with an original license. The applicants had not acquired any interest in a continuation of the license because one had never been issued.

But in the instant case the license had been issued and renewed since about 1961. In *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the question concerned the suspension of a driver's license. The court said, "Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. [citing cases.] This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege'." 402 U.S. 539, 91 S.Ct. 1589.

Whatever may be said about the sale and distribution of liquor being under the ban of law, the fact remains that it is a lawful enterprise for one to engage in if he has the proper license. That license is his livelihood just as surely as a driver's license, once issued, is important to the licensee's ability to earn a living.

*Roth,* supra, does not say a liquor license holder is not entitled to procedural due process. To the contrary, ~~Roth~~ says that the Twenty-first Amendment did not abrogate a requirement of procedural due process. 412 U.S. at 515, 93 S.Ct. 2222. The principal opinion in the instant case seems to hold that a liquor licensee is not entitled to procedural due process in connection with the renewal of his license. In my opinion, that is not a correct statement of the law.

In my opinion, the due process clause of the Fourteenth Amendment entitles a liquor licensee to a meaningful hearing before the supervisor on the question of license renewal. I also believe that the equal protection clause requires that the same or substantially the same rights be afforded the licensee on renewal as is afforded a licensee with respect to revocation or suspension.

Since there was no hearing afforded the licensee by the liquor supervisor, I am of the opinion that the circuit court should not be prohibited from receiving evidence on review in order to decide whether the refus-

al to renew was authorized by law as I think that, in this case, the reception of evidence is essential to due process. I realize that this dissent has gone beyond the specific issue presented in this prohibition case but I believe that such was necessary because the principal opinion seems to address itself to the overall constitutionality of various provisions of the Missouri Liquor Control Law. It may be that a major portion of the principal opinion is dictum in this case. If so—then so is the major portion of this dissent.

On the specific question of whether or not this court should prohibit the circuit court from taking testimony in this case, I am of the opinion that our preliminary rule in prohibition should be quashed. Section 311.700, RSMo 1969, requires the circuit court to determine whether or not the decision of the supervisor was authorized by law or as some cases have put it, whether the decision was arbitrary or capricious. Here, there had been no hearing before the supervisor and therefore the only way the circuit judge can make the decision required of him is to find out what the decision of the supervisor was actually based upon in order to decide if that decision was, in fact, an abuse of discretion.

Otherwise the circuit court is relegated to accepting as factually true whatever the supervisor chooses to put into his letter advising the licensee of his refusal to renew and merely "rubber stamp" the decision of the supervisor.

In order to afford any meaningful review in a case such as this, the circuit court, in my opinion, should not be prohibited from receiving evidence with respect to the basis of the supervisor's decision. I would quash our preliminary rule as having been improvidently granted and, if an appeal is taken from the circuit court's judgment, rule issues presented on that appeal at that time.