**MISSOURI DEPARTMENT OF INSURANCE, Appellant,**

v.

**Rodger D. KENSER, Respondent.**

**No. WD 49046.**

Missouri Court of Appeals,
Western District.

Sept. 13, 1994.

Joseph R. McMahon, Asst. Gen. Counsel, Mo. Dept. of Ins., Jefferson City, for appellant.

Roger D. Kenser, pro se.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

The Administrative Hearing Commission rejected the contention of the Missouri Department of Insurance that it had cause to discipline the insurance agent license it issued to Rodger D. Kenser. The Department appealed the AHC's decision to circuit court which affirmed the decision. The Department now appeals that judgment to this court. We reverse and remand for further proceedings.

■ The Department sought to discipline Kenser for selling insurance for a company not authorized to do business in Missouri. After a hearing, the AHC made these findings of fact, which the Department does not challenge on appeal:

1. Kenser holds an insurance agent license in good standing and has done so for 21 years.

2. Secure Marketing Company of America (Secure) was a telemarketing company. It found persons who desired to purchase insurance and sold information "leads" about such persons. Secure helped Royal Guardian Mutual Benefit (Royal) sell the Royal Guardian Custom Care Plan (the Plan), a medical insurance product. Gary Beck was the president of Secure. Lloyd Royer was the vice-president.

3. In May 1991, Beck and Royer contacted Kenser on Secure's behalf asking him to solicit and sell the Plan. Beck told Kenser that Commonwealth Life Insurance Company (Commonwealth) underwrote the Plan. Kenser inquired of the Director whether the Director had licensed Commonwealth. The Director, through his agents, indicated to Kenser that Commonwealth held a license in good standing. On this information, Kenser began soliciting and selling the Plan.

4. Kenser did not contact Commonwealth to ask if they underwrote the Plan. Kenser did not inquire of the Director whether the Director had certified Royal to do business in Missouri. It is not the custom of the insurance business for agents to examine the financial capacities of their employers.

5. Commonwealth never underwrote the Plan. Royal never had the Director's certificate of authority to transact insurance business.

6. On July 1, 1991, Kenser told Amber Evilsizer that Commonwealth underwrote the Plan. That a solvent entity underwrote the Plan was important to Evilsizer, but not specifically that Commonwealth did so. Evilsizer bought the Plan and gave Kenser a check made out to Royal for the Plan. Kenser received a commission from the sale.

7. In mid-September 1991, Beck told Kenser there might be a problem with the

Plan. Kenser immediately ceased soliciting and selling the Plan. Beck later wrote Kenser to inform him that another company was underwriting the Plan and to ask him to resume soliciting and selling the Plan. Kenser refused.

8. On October 18, 1991, the Director issued a letter warning subscribers of the Plan to seek other coverage. The Director did not send the letter to Kenser. A client informed Kenser of the letter. Kenser told as many clients as he could to cancel the Plan, seek other coverage, or both. He also contacted Beck, who denied all knowledge of the matter. The weekly statements Secure sent Kenser showed that no clients· held the Plan anymore. Further, Royer told Kenser that no clients held the Plan anymore.

9. Royal never paid Evilsizer's medical claims under the policy, so she had to pay them herself.

The Department contends that the AHC improperly applied the law to these facts when it found that Kenser's insurance agent license was not subject to discipline.

In an appeal from the circuit court's review of an administrative decision, we review the decision of the administrative agency. *Missouri Department of Insurance v. Wilkerson*, 848 S.W.2d 10, 12 (Mo.App.1992). We may correct any errors in an administrative decision's interpretation of law. *Id.*

The Department asserts that it established cause to discipline Kenser's license pursuant to § 375.141.1(1), RSMo Cum.Supp.1992, which authorized disciplinary action against a licensee if, "[i]n [his] dealings as an agent, ... [he] violated any provisions of, or any obligation imposed by, the laws of this state[,]" and pursuant to § 375.141.1(4) which authorized discipline for "[d]emonstrated lack of trustworthiness or competence[.]" We agree that the Department established that Kenser violated state insurance laws.

■ In considering that issue, the AHC rejected the Department's contention that Kenser violated § 375.786.1, RSMo 1986, which prohibits "any insurance company to

transact insurance business in this state ... without a certificate of authority from the director[.]" The AHC concluded that this section "imposed no duty on Kenser for him to violate." We disagree in light of § 375.-046, RSMo 1986, which provides:

> Any person or persons in this state who shall receipt for any money on account of or for any contract of insurance made by him or them for any insurance company or association not at the time authorized to do business in this state, or who shall receive or receipt for any money from other persons, to be transmitted to any such insurance company or association, either in or out of this state, for a policy or policies of insurance issued by the company or association, ... or who shall make or cause to be made, directly or indirectly, any contract of insurance for the company or association, shall be deemed to all intents and purposes an agent of the company or association, and shall be subject to all the provisions and regulations and liable to all the penalties provided and fixed by sections 375.010 to 375.920.

This statute places on Kenser, as Royal's agent, a personal responsibility. Section 375.786 was violated when Royal transacted insurance business without a certificate of authority.[1] Kenser's license, therefore, was subject to discipline pursuant to § 375.141.1(1).

■ We concur with the AHC's conclusion that the Department did not establish cause to discipline Kenser's license for untrustworthy conduct. Although the Department established that the literature Kenser distributed contained false or misleading information, Kenser took steps to ascertain its accuracy. The Department did not establish that Kenser had a duty to do more than he did or that his reliance on Royal's representations to him was inappropriate. Kenser's duty was to act with reasonable care, skill and diligence. *Kelley v. Shelter Mutual Insurance Company*, 748 S.W.2d 54, 56 (Mo. App.1988). The Department does not estab-

1. The AHC acknowledged in its conclusions of law that Royal was an insurance company needing certification.

lish that Kenser's reliance on Royal's representations to him was contrary to reasonable care, skill and diligence.

We conclude that the AHC misapplied the law when it determined that the Department did not establish any cause to discipline Kenser's license. We reverse the judgment of the circuit court affirming the AHC's decision and hold that the Department established cause pursuant to § 375.141.1(1). We remand the case to the circuit court so it can authorize a disciplinary hearing by the Department.

All concur.