**Rod WOODRUFF, d/b/a Buffalo Beer, Appellee,**

v.

**MEADE COUNTY BOARD OF COMMISSIONERS, Appellant.**

Nos. 18490, 18491.

Supreme Court of South Dakota.

Considered on Rehearing Feb. 13, 1995.

Decided Sept: 6, 1995.

David M. Dillon, Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for appellee.

Bryce A. Flint and Michael J. Jackley, Meade County State's Attorney, Sturgis, for appellant.

KONENKAMP, Justice.

In *Woodruff v. Meade County,* 522 N.W.2d 771 (S.D.1994) (*Woodruff I*), we reinstated the county commission's decision not to renew Ron Woodruff's malt beverage license. Rehearing was granted to reconsider Woodruff's due process claims. Finding that he received requisite due process, we affirm our decision in *Woodruff I.*

## FACTS

Ron Woodruff owns and operates Buffalo Beer, a beer establishment located on the Buffalo Chip Campground near Sturgis, South Dakota. The business is typically open only during the annual Sturgis motorcycle rally. Although it had renewed one-year malt beverage licenses in the past, the Meade County Board of County Commissioners (Meade County) denied Woodruff's 1992 application. The same occurred in 1993. Nudity and inability of law enforcement to work effectively when at the campground were the cornerstones of the denial.

Woodruff appealed both denials in circuit court. In a consolidated de novo review, the trial court held Meade County's decision was an arbitrary abuse of discretion and reversed. We reversed the circuit court and reinstated the denials after determining that the trial court clearly erred in its findings of fact and conclusions of law. *Woodruff,* 522 N.W.2d at 774. In response to his claim to the due process protections of SDCL 35–2–10, we held the statute was inapplicable as it concerned revocation and suspension only, not renewal. *Id.* at 774. SDCL 35–2–10 provides:

> Any license issued under this title may, in compliance with chapter 1–26, be *revoked or suspended* by the secretary upon *proof of violation by the licensee,* his agents or employees or by the manager or contractual operators of retail establishments and their agents or employees operating under a county or municipal license, of any provision of this title, or any rule or regulation adopted by the secretary as provided in this title, or violation of ordinance or regulation of the political subdivision issuing the license relevant of alcoholic beverage control.

In his rehearing petition, Woodruff asks that we more fully consider the application of due process to the renewal of alcohol beverage licenses.

## ANALYSIS

A rehearing is not a "second bite at the apple." SDCL 15–30–4 requires the petition to "state briefly the ground upon which a rehearing is asked and the points supposed to have been overlooked or misapprehended by the court[.]" Although Woodruff's issues specifically address due process, a question of law, Woodruff continues to argue also that the trial court's findings were not clearly erroneous. This was previously settled and was not the basis for our granting a rehearing. In fact, with two members of the *Woodruff I* Court now retired, it would be rather questionable for a reconstituted Court to rehash the same issues on the same appeal. Thus we consider only the due process question purportedly "overlooked or misapprehended" in *Woodruff I.*

Applicants for renewal must go through the same process as new applicants. SDCL 35–2–1.2. SDCL 35–2–10 specifically addresses revocation and suspension of alcoholic beverage licenses. South Dakota law makes no separate provision for renewing such licenses. What are we to conclude from this? Is a person who seeks to renew to be treated the same as an original applicant, no matter how many years that person has held the license? Woodruff cites *City of Wyoming v. Liquor Control Comm'n,* 48 Ill. App.3d 404, 6 Ill.Dec. 258, 262, 362 N.E.2d 1080, 1084 (1977):

> [I]t could not have been the legislative intent that a local liquor control commissioner be able to easily avoid the application of the statutory procedural requirements to license revocation by waiting for the license to expire and then refuse to issue a renewal license. For that reason we interpret the term "revocation" … to include the refusal to issue a renewal license.

The court in *Wyoming* reasoned that in the complete absence of any due process for renewal applicants, the Illinois legislature must have intended that such applicants would be treated the same as those whose licenses were up for revocation.

*Bundo v. City of Walled Lake,* 395 Mich. 679, 238 N.W.2d 154, 160 (1976), another case Woodruff relies upon, held the interest of a licensee in obtaining a renewal of his liquor license is akin to the property interest a teacher has in renewing employment in an attempt to establish tenure. This was a broad interpretation of the holding in *Perry*

*v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which held *circumstances of employment* could create a quasi-tenure which could form the basis of a sufficient "property" interest in re-employment requiring due process protection. Woodruff states a person involved in beer sales would not invest time and money in the business, without anticipating that the license will be renewed. "Were the practice any different, no one would take the risk of opening such an establishment or making the necessary expenditures." *Bundo,* 238 N.W.2d at 161. This holding must nonetheless be viewed within the context of Michigan law in existence at that time: renewal licensing was specifically governed by a statute which gave the local authority the right even on a whim to deny renewal. *Id.* at 163. The same lack of criteria existed in the *Wyoming* case.

Consequently, the court in *Bundo* held one seeking renewal of an existing alcoholic beverage license was entitled to "rudimentary due process." 238 N.W.2d at 162. This involves (a) timely written notice detailing the reasons for proposed administrative action; (b) an effective opportunity to defend by confronting any adverse witnesses and by being allowed to present in person witnesses, evidence, and arguments; (c) a hearing examiner; and (d) a written, although relatively informal, statement of findings. *Id. City of Wyoming,* 6 Ill.Dec. at 262, 362 N.E.2d at 1084, which held a liquor license is not a property right, mandated nearly identical procedures be followed concerning the renewal of a liquor license in Illinois.

■ License renewal applicants in other jurisdictions may be entitled to rudimentary procedural due process, but our law does not require imposing the same process allowed to those whose licenses are up for revocation, because "there clearly is no general property right in [an alcoholic beverage] license in South Dakota as between the state and the licensee." *Rushmore State Bank v. Kurylas,* 424 N.W.2d 649, 650 (S.D.1988); *cf.* SDCL 35–2–10; *Janssen v. Maxam,* 289 N.W.2d 256 (S.D.1980) (administrative procedures act not applicable to denial of license application). Thus we must leave the fine tuning of renewal procedures to our Legislature. In

reality, South Dakota law provided the very procedural process Woodruff claims he was denied; he got as much, if not more, procedural protections than the courts required in *Bundo* and *Wyoming.* He applied for renewal of his license and was denied at a public hearing, held after published notice. Thereafter, he received at his request a de novo trial before a circuit judge. SDCL 7–8–30. Under this statute the circuit court hears and determines the issues as if it had been brought before the court originally: the county commission's decision was entitled to no deference. At the de novo hearing both Woodruff and Meade County presented their arguments, called witnesses, introduced evidence, and cross-examined adverse witnesses. Following the proceeding, the judge issued detailed findings of fact and conclusions of law. Woodruff prevailed and his license was renewed. Meade County then appealed the de novo ruling, which we reversed.

■ Suitability of location remains a factor regardless of how many times an applicant has received approval in the past at the same location. *See* SDCL 35–2–1.2. Meade County had every right to assert this criteria. We will not presume that a location, though at one time declared suitable for the sale of alcohol, will always remain so. The character of neighborhoods and businesses tend to change over time and a local governing body has a legitimate interest in managing the alcoholic beverage licensing in its jurisdiction to assess whether an alcohol sales location continues to be suitable. The Buffalo Chip Campground was found not to be a suitable location. The pertinent facts were considered through the due process of a de novo hearing. We affirmed the determination of unsuitability. *Woodruff I,* 522 N.W.2d at 775.

■ We agree with Woodruff that people would not take the risk of opening a business with all the attendant expenses if they did not believe it could stay open for more than one year. But a renewal applicant's protection lies in the law's prohibition of arbitrary or capricious exercise of discretion by a county commission and full de novo review of any such decision. Based upon the factual hold-

ings in *Woodruff I,* Meade County's decision was not arbitrary. When Buffalo Beer initially received its license, its location was suitable. Now, the location due to law enforcement problems is objectionable. Therefore, Meade County's denial of the 1992 and 1993 malt beverage licenses is upheld.

AMUNDSON, J., concurs.

MILLER, C.J., concurs in result.

SABERS, J., dissents.

GILBERTSON, J., not having been a member of this Court at the time this case was considered, did not participate.

MILLER, Chief Justice (concurring in result).

I stand by the earlier dissents of Justice Sabers and myself and continue to be of the belief that the majority in *Woodruff I* misapplied the standard of review. However, as the majority author on rehearing has noted, that matter "was previously settled and was not the basis for our granting rehearing."

SABERS, Justice (dissenting).

I dissent for all the reasons stated in my dissent in *Woodruff v. Meade County* (*Woodruff I* ), 522 N.W.2d 771 (S.D.1994). The basis of the circuit court's decision under SDCL 7–8–30 was factual, and is entitled to due deference from this court. The circuit court decision was right then and still is. *Woodruff I* was wrong then and still is. Due process *and* equal protection of the laws require an affirmance of the circuit court, which is a reversal of *Woodruff I* on this petition for rehearing.